# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

IT'S INTOXICATING, INC.,            :

:   CIVIL ACTION NO. 3:CV-11-2379

    Plaintiff            :            (JUDGE MANNION)

        v.            :

MARITIM HOTELGESELLSCHFT :
mbH and DANIELA ZIMMER,

           :

    Defendants            :

## MEMORANDUM

Presently before the court is the motion for summary judgment of defendant Maritim Hotelgesellschaft mbh ("Maritim") pursuant to Fed. R. Civ. Pro. 12(b)(2), 12(b)(3) and 56(c). The motion argues that the case should be dismissed for lack of personal jurisdiction over defendant Maritim. The motion further contends that dismissal is appropriate because this court is an improper venue. The motion also asserts that defendant Daniela Zimmer did not act as an agent of Maritim. Moreover, the motion asserts that venue in this court is not proper. Additionally, the motion maintains that a contract did not exist between plaintiff and Maritim, and that there are no facts to support plaintiff's unjust enrichment claim against Maritim. Because the court finds disputed issues of

material fact regarding Maritim's contentions, except with respect to plaintiff's unjust enrichment claim, Maritim's summary judgment motion (**Doc. 51**) will be **GRANTED IN PART,** and **DENIED IN PART.**

## I.    Procedural Background

Plaintiff It's Intoxicating, Inc., filed this action, through counsel, on December 26, 2011, against defendants Maritim and Zimmer. (Doc. 1). Defendants both moved to dismiss the complaint and the court granted the motion. However, plaintiff was permitted to file an amended complaint to properly plead personal jurisdiction over the defendants. (Doc. 20). Plaintiff filed its amended complaint on September 14 , 2012, against both defendants and asserted claims for breach of contract, fraud, unjust enrichment and conversion. (Doc. 21). Defendants then both moved to dismiss the amended complaint. (Doc. 22. Doc. 24).

On July 31, 2013, the court granted in part, and denied in part defendants' motions to dismiss. (Doc. 40, Doc. 41). *See* It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH, 2013 WL 3973975 (M.D.Pa. July 31, 2013). Specifically, plaintiff's claims for fraud, conversion, and request for punitive damages were dismissed. Plaintiff's request for attorney's fees was dismissed

2

without prejudice. The court denied the motions regarding the remaining requests, including the contention that plaintiff failed to establish personal jurisdiction over defendants since defendants did not present the court with affidavits or other evidence challenging jurisdiction. The court found that plaintiff's allegations in its amended pleading sufficed to establish personal jurisdiction pursuant to Pennsylvania's long-arm statute. The court also found that since defendants did not provide evidence as to the issue of whether Zimmer was acting as agent for Maritim, plaintiff could rely solely on its factual allegations in its amended pleading to show agency. Further, the court found venue was proper in the Middle District of Pennsylvania.

Discovery was then conducted by the parties. On June 20, 2014, defendant Maritim filed a motion for summary judgment. (**Doc. 51**). Defendant Zimmer did not file a dispositive motion and the time to do so has expired. On June 23, 2014, defendant Maritim filed its support brief and its statement of material facts, under Local Rule 56.1. (Doc. 52. Doc. 53). Defendant Maritim also submitted an appendix of exhibits. (Doc. 54). On July 14, 2014, plaintiff filed its opposition brief and its response to defendant's statement of material facts with exhibits. (Doc. 55. Doc. 56). Plaintiff also filed an affidavit of Cheryl Scott dated July 14, 2014. (Doc. 57). On July 28, 2014, defendant Maritim filed

its reply brief. (Doc. 60). The case is now ripe for the court's decision.

## II.    Factual Background[1]

Plaintiff, It's Intoxicating Inc., is a Pennsylvania corporation, located in Forty–Fort, that distributes cosmetic products to various retailers. (Doc. 21, at 1. Doc. 57, at 1). Defendant Maritim is a German company with a primary business address in Bad Salzuflen and it owns and operates 38 hotels throughout Germany. (Doc. 21, at 1. Doc. 57, at 1). Defendant Zimmer is an individual living in Berlin, Germany. (Doc. 57, at 1). Plaintiff alleges in the amended complaint that Zimmer is an employee of Maritim who was delegated the authority to purchase beauty products on behalf of Maritim. (Doc. 21, at 1).

On October 5, 2007, defendant Zimmer contacted plaintiff in Pennsylvania by e-mail, represented that she was acting on behalf of Maritim, and explained that Maritim was seeking beauty products to use in its hotels. (Doc. 21, at 1, 2. Doc. 57, at 1). On October 2, 2007, Plaintiff responded from Pennsylvania via e-mail,

---

[1] The court notes that the lengthy facts of this case as alleged in the amended complaint were detailed in its July 31, 2013 Memorandum. 2013 WL 3973975, *1-*4. The almost identical facts, with some revisions and amendments, are set forth in Scott's July 2014 affidavit filed by plaintiff. (Doc. 57). The court now primarily relies upon Scott's affidavit for the factual background of this case. Scott is plaintiff's Chief Operating Officer ("CEO").

providing price lists as well as pictures of the products Zimmer requested. (Doc. 21, at 2. Doc. 57, at 2). On October 11, 2007, Zimmer called plaintiff in Pennsylvania and asked how long it would take to manufacture and ship the specified products to Maritim's hotels. (Doc. 21, at 2. Doc. 57, at 2). Plaintiff responded via e-mail from Pennsylvania the same day with information regarding manufacturing and shipping times for specific products. Plaintiff also asked Zimmer in an e-mail, three days later, if she needed assistance in forecasting product quantities for Maritim's 38 hotels. (Doc. 1, at 2. Doc. 57, at 2).

Plaintiff, via e-mails from Pennsylvania, and Zimmer continued their discussions about plaintiff's products until October 19, 2007, when Zimmer called plaintiff at Scott's Pennsylvania phone number and stated that Maritim wished to buy its products for use in thirty-eight of its hotels in Germany. (Doc. 21, at 3. Doc. 57, at 2-3). On October 22, 2007, Zimmer called Scott again and requested that specific products Maritim sought to buy from plaintiff be sold exclusively to Maritim. (Doc. 21, at 3. Doc. 57, at 3). On the same day, plaintiff, from Pennsylvania, provided Zimmer, via e-mail, a twelve month "Exclusivity Agreement," which the parties subsequently agreed to lengthen to eighteen months at the request of Maritim's CEO. (Doc. 21, at 3. Doc. 57, at 3). Plaintiff

5

also sent via e-mail from Pennsylvania a document titled "Conditions of Sale,"

which later became part of the sales agreements. (Doc. *21,* at 3. Doc. 57, at 3).

That document stated:

> This agreement will be governed by and construed in
> accordance with the laws of the state of Pennsylvania, United
> States of America. The parties hereto hereby consent to the
> exclusive jurisdiction and venue of the United States District
> Court for Luzerne County for any action that may be brought
> in connection with this agreement and/or from the use of the
> Aromapro software and/or from the use of the Aromapothecary
> products.

(Doc. No. 21*,* at 3. Doc. 21-1. Doc. 57, at 3).

On October 22, 2007, Zimmer contacted plaintiff in Pennsylvania to

request pricing and information for a distinct type of beauty products for

Maritim's Timmendorfer Strand Hotel, and plaintiff sent an e-mail response from

Pennsylvania with price lists and information. (Doc. 57, at 3-4).

On October 22, 2007, plaintiff, via e-mail from Pennsylvania, provided

Zimmer price lists for its products, and Zimmer responded by asking plaintiff for

"suggested retail prices Maritim should charge for specific products for the

Maritim Timmendorfer Strand Hotel." (Doc. 57*,* at 4). As requested, Plaintiff

also sent, from Pennsylvania, a list of current clients to Zimmer.

On October 23, 2007, Plaintiff, via e-mail from Pennsylvania, requested

an estimate of Maritim's order for its 38 hotels, but Zimmer explained that

6

Maritim's CEO was currently approving the company's product quantities. (Doc. 21, at 4. Doc. 57, at 4). On October 29, 2007, plaintiff, via telephone from Pennsylvania, discussed with Zimmer the exact quantity of goods and deposit required by Maritim's hotels. (Doc. 21, at 4. Doc. 57, at 4). Defendant Zimmer followed this call with an e-mail to plaintiff in Pennsylvania stating that she would send a purchase order and deposit soon. Zimmer requested bank details from plaintiff. (Doc. 21, at 5. Doc. 57, at 4-5).

Zimmer and plaintiff continued to communicate, via e-mails to and from Pennsylvania, in November of 2007, about Maritim's confidential sales numbers, payment details, delivery estimates, purchase orders, and further amendments to the Exclusivity Agreement. (Doc. 21, at 5. Doc. 57, at 5). On November 24, after revising the Exclusivity Agreement for the second time, plaintiff requested, from Pennsylvania, guidance from Maritim as to whether an order of goods by another German company conflicted with the party's Exclusivity Agreement. (Doc. 21, at 5. Doc. 57, at 5). Zimmer looked into the potential agreement, concluded that there was no conflict, and advised plaintiff in Pennsylvania, via a correspondence, that it could proceed with the sale. (Doc. 21, at 5–6. Doc. 57, at 5).

On December 1, 2007, plaintiff received, via U.S. mail in Pennsylvania, the

final Exclusivity Agreement, signed by the CEO of Maritim. "The mail item was contained in an official Maritim logo and letterhead envelope." (Doc. 21, at 6. Doc. 57, at 6).

On December 14, 2007, Zimmer called plaintiff in Pennsylvania to request the status of the production of the products for Maritims' hotels. Plaintiff responded, via correspondence from Pennsylvania, that it had not yet received a purchase order from Zimmer but that materials had been ordered and production begun. (Doc. 21, at 6. Doc. 57, at 6). On January 14, 2008, plaintiff received in Pennsylvania an e-mail from Zimmer with a spreadsheet detailing the quantities of product to be shipped to the 38 Maritim hotels. On January 15, 2008, Zimmer sent a request to plaintiff in Pennsylvania for leatherette trays for the 38 Maritim hotels, and plaintiff sent an e-mail to Zimmer referring Maritim to a tray manufacturer in China. Zimmer also sent plaintiff an e-mail indicating that Maritim would announce the sales of the products in its hotels at a trade show in March of 2008. (Doc. 57, at 6).

Also, in January of 2008, plaintiff received in Pennsylvania an order from Zimmer for the purchase of spa products for Maritim's Timmendorfer Hotel. (Doc. No. 21, at 6. Doc. 57, at 6).

On March 3, 2008, plaintiff shipped from Pennsylvania 441 cartons of

8

beauty products on eight skids directly to Maritim Hotel Dusseldorf, one of defendant's hotels located in Dusseldorf, Germany. (Doc. 21, at 7. Doc. 57, at 6-7). This shipment consisted of the original order for Maritim's 38 hotels and the subsequent order for the Timmendorfer. (Id.). Plaintiff then sent from Pennsylvania to Zimmer an e-mail with invoices for its products sent directly to Maritim in the amount of $181,547.80. (Doc. 57, at 7). On March 14, 2008, Maritim received and accepted the shipment from plaintiff at its Dusseldorf location. (Doc. 21, at 7. Doc. 57, at 7). In April of 2008, plaintiff sent an e-mail from Pennsylvania and requested payment for the products, and sent Zimmer bank wire details and instructions about how to transmit payment for the March 3 shipment. (Doc. 21, at 7. Doc. 57, at 7).

On April 11, 2008, plaintiff received in Pennsylvania a phone call from Zimmer about the production of a new line of in-room amenity products for the 38 Maritim hotels containing the Maritim logo, and plaintiff sent a request for additional detalis. Plaintiff also received a request from Zimmer for product treatment protocols for Maritim Spa. Doc. 57, at 7).

On April 28, 2008, Zimmer called plaintiff in Pennsylvania to inform plaintiff that a $48,000 payment was sent via wire. (Doc. 21, at 7.) Plaintiff sent an e-mail the same day explaining that payment had not been received, and Zimmer

said she would look into the problem with the wire the next day. (Doc. 21, at 8.

Doc. 57, at 7-8). On April 29, 2008, plaintiff sent an e-mail from Pennsylvania

to Zimmer again requesting payment, and Zimmer called plaintiff requesting a

"simple breakdown of charges," which plaintiff provided, via e-mail from

Pennsylvania, the next day. (Doc. 57, at 8).

In early May of 2008, Maritim began to run into problems selling plaintiff's

beauty products. (Doc. 21, at 8). Zimmer e-mailed plaintiff, in Pennsylvania, on

May 15 "stating that the sell through numbers for the products at the 38 Maritim

hotel locations were not really good in April, and she will talk to the CEO before

taking steps to increase sales." (Doc. 21, at 8. Doc. 57, at 8). Plaintiff contacted

Zimmer, via e-mail, on May 16, asking for a copy of the "sell through numbers"

for the 38 hotels. On May 20, Zimmer e-mailed plaintiff "requesting bank details

again ASAP." (Doc. 21, at 8. Doc. 57, at 8). Plaintiff again sent Zimmer bank

wire details, via e-mail from Pennsylvania, and a week later e-mailed Zimmer

about the status of the wire payment. (Doc. 21, at 8. Doc. 57, at 8).

On June 4, 2008, plaintiff received a call in Pennsylvania from Zimmer

requesting credit for products that were damaged during shipping from the

Dusseldorf hotel to the other Maritim hotels. (Doc. 57, at 8-9).        On June 5,

2008, plaintiff received, via wire transfer to its Pennsylvania bank, a payment

of $25,724.85 for the March 3 shipment. (Doc. 21, at 9.) Plaintiff contacted Zimmer by telephone from Pennsylvania the same day to inquire why Maritim had not wired the entire outstanding amount. (Doc. 21, at 9. Doc. 57, at 9). Subsequently, plaintiff received in Pennsylvania joint e-mails from Zimmer and Brigitta Koenig, the UPS handler at Maritim hotels, about damages during shipping. (Doc. 57, at 9). Konig's e-mail address was bkoenig@maritim.de. Plaintiff avers that Koenig is Zimmer's mother. On June 15, 2008, plaintiff sent from Pennsylvania an e-mail to Zimmer with a memo crediting Maritim's account in the amount of $5,823.60. Plaintiff credited the account in Pennsylvania. (Id.).

On August 28, 2008, after another month had passed without payment, plaintiff asked Zimmer, via an e-mail from Pennsylvania, for a contact in Maritim's accounts payable department. (Id.). Zimmer responded via e-mail to plaintiff explaining that she could not provide plaintiff with an accounts payable contact because "her position and salary would be jeopardized if she was to provide such details as a direct contact to Maritim's accounts payable department." (Id.).

On November 5, 2008, plaintiff received an e-mail request in Pennsylvania from Zimmer for a signed statement from UPS that the products sent from

11

Pennsylvania in March complied with UPS shipping standards, and plaintiff sent an e-mail stating that the products were shipped pursuant to UPS standards for 7 years without incident and UPS did not provide a written approval. (Id., at 9-10).

On April 6, 2009, plaintiff e-mailed Zimmer from Pennsylvania pleading for payment and threatening to approach her superiors at Maritim. (Id. at 10.) Zimmer e-mailed plaintiff and stated that going to Maritim superiors would have no effect on the situation and recommended plaintiff not do so. Regardless, Plaintiff sent from Pennsylvania e-mails to a Maritim employee by the name of Ulla Schulz on April 20 and May 4, 2009, regarding the outstanding amount owed. (Id.).

On May 14, 2009, Brigitta Koenig, on Maritim e-mail letterhead, e-mailed plaintiff in Pennsylvania to ask for updated pricing and minimum order requirements for another order to be shipped to Maritim's Timmendorfer Hotel. (Id.). Plaintiff responded in an e-mail to Koenig with the requested information, and Koenig later e-mailed plaintiff in Pennsylvania and requested "a discount on product prices previously sent on May 4, 2009, for the Maritim Timmendorfer Hotel." (Id.). Plaintiff sent an additional e-mail from Pennsylvania requesting that Koenig provide more information about the products for the Timmendorfer

Hotel. (Id. at 10-11).

On June 2, 2009, plaintiff, from Pennsylvania, called Britt Winters at Maritim Hotels headquarters, to discuss Maritim's outstanding balance. (Id. at 11). Winters asked plaintiff to refrain from discussing the issue with anyone but her and, on June 3, 2009, Winters, on Maritim e-mail letterhead, e-mailed plaintiff in Pennsylvania stating that she had "relayed the information of outstanding payment to Maritim CEO and he will inquire about the payment." (Id.). On June 8, 2009, plaintiff received another e-mail from Winters in Pennsylvania, this time "stating that Maritim cannot have communication with Plaintiff regarding non-payment as they have been enjoined by the attorney for Zimmer with a letter." (Id.). Plaintiff, via e-mail to Winters, requested a copy of the injunction but, to date, plaintiff has never been provided one. (Id.).

On December 16, 2009, plaintiff sent an e-mail to Gerd Prochaska, CEO Maritim Hotels, requesting payment or settlement, "and this, and all efforts to receive payment thereafter, have been unsuccessful." (Id.).

In her affidavit, Scott further avers, at all relevant times, that: "plaintiff operated primarily, if not exclusively out of Pennsylvania[;]" and "communications to and from plaintiff ..., were primarily, if not exclusively, to and from plaintiff in Pennsylvania." (Id. at 12).

Additionally, Scott avers that neither Maritim nor Zimmer ever challenged the jurisdictional provision in the Conditions of Sale which clearly placed jurisdiction and venue in Pennsylvania. (Id.).

Scott avers that the total purchase of the goods sold to Maritim was $181,547.80, that the purchase price was specifically communicated to Maritim, that the goods were delivered and accepted by Maritim, and that credit was given to Maritim in the amounts of $5,823.60 and $25,724.85. Moreover, "plaintiff is not seeking $31,168.80 for a portion of the goods that were specifically processed through a French company." (Id.). As such, the current outstanding balance plaintiff is requesting for its good shipped from Pennsylvania to Maritim is $118, 830.55, plus interest. (Id.).

Finally, Scott avers that defendant Zimmer was, at all relevant times, acting as agent for Maritim "with actual and/or apparent authority." In support of this averment, Scott avers the following facts occurred during negotiation and performance of the contract:

1. Zimmer supplied Plaintiff with complementary hotel rooms at Maritim;

2. Zimmer hosted Maritim events at Maritim hotels;

3. Zimmer provided Plaintiff complimentary food and beverages during all of Plaintiff's stays at Maritim hotels;

14

4. Zimmer sent Plaintiff complimentary Maritim chauffeurs from airports;

5. Zimmer offered additional complimentary stays at Maritim hotels;

6. Zimmer represented to Plaintiff that Zimmer received salary from Maritim;

7. Plaintiff observed Zimmer in meetings with Maritim directors;

8. Zimmer described to Plaintiff confidential corporate initiatives of Maritim, such as the hotels putting coffee bars in their chain of hotels, and changing from leased spa space to corporate owned/operated space; and

9. Agents of Maritim, other than Zimmer, directly contacted Plaintiff in regard to both the subject contract, as well as other proposed contracts, as set forth above.

10. Those agents of Maritim, communicated directly to Plaintiff, under letterhead and return e-mail address of Maritim, as set forth above;

11. One of those agents of Maritim, that communicated under Maritim letterhead, and Maritim return e-mail address, and in regard to the specifics of the subject contract, is believed to be the mother of Zimmer, as set forth above;

12. It is further believed, and therefore averred that Zimmer, and other members of her family have maintained close personal relationships with the directors of Maritim, for much or all of Zimmer's life. (Id., at 13-14).

### III.   Material Facts[2]

Maritim is a German based company with offices in Germany. Maritim does not regularly conduct business in Pennsylvania. Maritim does not have an office, or any physical presence in Pennsylvania, and it does not have any employees in Pennsylvania. Maritim owns and operates approximately 38 hotels in Germany. Maritim was in need of beauty products for its hotels. Beauty Retail GmbH ("BRG"), also a German based company, had a delivery contract with Maritim whereby BRG provided beauty retail products to Maritim. Defendant Zimmer, a resident of Berlin, Germany, was the director of BRG. Plaintiff is a Pennsylvania corporation located in Forty-Fort and it is in the business of supplying cosmetic goods to retailers.

In October of 2007, Zimmer contacted plaintiff in Pennsylvania indicating that Maritim was seeking beauty products for use in its hotels. The parties dispute whether Zimmer was acting as an agent of Maritim at any time relevant to this case and whether Maritim authorized Zimmer to act as its agent. Maritim

---

[2]Unless otherwise noted, the facts are taken from the parties' statements of undisputed facts and the exhibits attached thereto. (Doc. 53, Doc. 56). Disputed facts are noted. To the extent plaintiff states that Maritim's statements are unsubstantiated and that genuine issues of fact exist, plaintiff did not cite to evidence in the record to support these responses as required. Also, Maritim cited to evidence in the record to support these statements. (Doc. 53, paragraphs 8-10, 13-14).

did not directly solicit business from plaintiff in Pennsylvania and did not enter into a contract with plaintiff. As stated, Maritim had a contract with BRG to provide beauty retail products to Maritim. Zimmer ordered the products alleged in the amended complaint from plaintiff but plaintiff contends that Zimmer was acting as agent for Maritim. Maritim states that it paid all monies owed to BRG for all of the products Maritim received from BRG, including the items BRG or Zimmer ordered from plaintiff. However, it is disputed whether plaintiff was paid in full for all of the products Zimmer ordered from plaintiff for Maritim.

Maritim states that Zimmer was never one of its employees, that she never acted as its agent, and that it never authorized Zimmer to act on its behalf and to enter into contracts on its behalf. Also, Zimmer stated that "she is not and never was an agent of Maritim, and that Maritim never authorized [her] to act on Maritim's behalf or to enter into contractual relationship on Maritim's behalf." (Doc. 54-2, at 6). Plaintiff states that the Scott affidavit, as detailed above, shows that Zimmer acted as agent for Maritim with actual or apparent authority during all relevant times. The court agrees with plaintiff and finds this issue to be disputed by the evidence.

There is no dispute that the Exclusivity Agreement specified in the amended complaint was between Aroma Works Software Inc./Aromapothecary

Products and Maritim, and that plaintiff was not mentioned in this agreement. Additionally, there is no dispute that the unsigned, undated "Aromapothecary Conditions of Sale" document which Scott provided to Zimmer, indicated that it was made for the seller "/Aromapothecary Products/Aroma Works Software Inc." and made no reference to Maritim, Zimmer or to plaintiff. (Doc. 21-1). However, plaintiff points out that it has an agency relationship with Aroma Works Software Inc./Aromapothecary Products, and that the agreement related to the sales contract at issue in this case. Further, plaintiff points out that during the formation and performance of the contract, Scott actually traveled to Maritim's hotel, attended Maritim's events, and was present for Maritim's meetings.

This Court has jurisdiction over this case based on diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2).[3] The initial question presented is whether this Court can exercise personal jurisdiction over Maritim.

--------

[3]We note that generally this federal court sitting in diversity applies the substantive law of Pennsylvania. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011)("A federal court sitting in diversity must apply state substantive law and federal procedural law.")(citation omitted).

## IV.   Standards of review

### A. Rule 12(b)(2)

In *DiLoreto v. Costigan, 600 F.Supp.2d 671, 681 (E.D. Pa. 2009)*, the

Court stated:

> Federal Rule 12(b)(2) provides for dismissal due to a "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Once a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), the burden shifts to the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1121 (W.D.Pa.1997)*. A plaintiff meets this burden by making a *prima facie* showing of "sufficient contacts between the defendant and the forum state." *Id.* (quoting *Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1223 (3d (Cir. 1992)). A Rule 12(b)(2) motion inherently requires resolution of factual issues outside the pleadings. Once the defense has been raised, plaintiff must sustain the burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence, but may not rely on the pleadings alone. *Weber v. Jolly Hotels,* 977 F.Supp. 327, 331 (D.N.J.1997) (citing, *inter alia, Time Share Vacation Club v. Atl. Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir.1984)). Courts must look beyond the pleadings when ruling on a motion brought under Rule 12(b)(2). *Id.*

*See also* Brown & Brown, Inc. v. Cola, 745 F.Supp.2d 588, 602 (E.D.Pa. 2010).

If the moving party does submit competent evidence refuting jurisdiction,

the non-moving party shoulders the burden of establishing, by a prepondence

of the evidence, that the court has jurisdiction over the matter. In re Chocolate

Confectionary Antitrust Litigation, 674 F.Supp.2d 580, 595 (M.D.Pa. 2009).

("Once these allegations are contradicted by an opposing affidavit, however,

19

plaintiff must present similar evidence in support of personal jurisdiction."). At this point, the plaintiff may not rely on bare pleadings but must support those pleadings with "actual proofs, not mere allegations." Id. (quoting Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990)). As such, "although the burden of persuasion always lies with the non-moving party, the burden of production rests initially with the party moving for dismissal under Rule 12(b)(2)." Id. at 595, n. 21.

Rule 12(b)(3), in conjunction with 28 U.S.C. §1391, requires the court to dismiss the case if the plaintiff fails to show that the district in which the suit is brought is the proper venue. Fed.R.Civ.P 12(b)(3).

### B. Rule 56(c)

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary

judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of

proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## V.    Discussion

### A.    Agency Relationship and Personal Jurisdiction over Maritim

Plaintiff filed its case in this court alleging that it has jurisdiction based on diversity jurisdiction. 28 U.S.C. §1332. (Doc. 21, at 1). Title 28 U.S.C. §1391(a) "provides that an action found on diversity of citizenship may be brought in a district 'where Defendant is subject to personal jurisdiction at the time the action is commenced.'" *Semanic v. Express Car Rental*, 2009 WL 1872095, *2 (E.D.Pa. June 29, 2009).

After discovery has been completed, Maritim again moves, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss with prejudice the Plaintiff's amended complaint for lack of personal jurisdiction over it. Maritim argues that "[t]here are no facts of record to support a finding of jurisdiction over [it] under specific jurisdiction as there are no facts of record that [it] purposefully directed 'minimum contacts with [Pennsylvania] such that [it] should reasonably

anticipate being haled into court there.'" (Doc. 52, at 15, citing North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990)). Maritim also states that there are no facts showing it "purposely availed" itself of the privilege of conducting activities in Pennsylvania, and that jurisdiction over it in Pennsylvania does not "comport with traditional notions of fair play and substantial justice." (Id.). As support for its contentions, Maritim relies on its above mentioned statements in its statement of material facts substantiated by its evidence. (Doc. 53). Maritim further argues that plaintiff did not submit any evidence to show it took any action to support a finding of personal jurisdiction over it by this court and that plaintiff merely relies on the actions of defendant Zimmer. (Doc. 60, at 11). As stated, plaintiff maintains that Zimmer, at all relevant times, acted as agent for Maritim with actual or apparent authority.

The *DiLoreto* Court, 600 F.Supp.2d at 681-682, stated:

> Federal Rule of Civil Procedure 4(e) [now Rule 4(k)(1)(A)] provides that federal courts may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. Fed. R. Civ. P. 4(e); *see also Blue Ribbon Commodity Traders, Inc. v. Supermercados Mr. Special, Inc.,* Civ. A. No. 07–4036, 2008 WL 2468381, at *2 (E.D.Pa. June 18, 2008). Under Pennsylvania's long-arm statute, personal jurisdiction over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be

based on the most minimum contacts with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons.Stat. §5322 (1992); *see Mellon Bank,* 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment."). Therefore, a court's inquiry is solely whether the exercise of personal jurisdiction over the defendant violates due process. *Mellon Bank,* 960 F.2d at 1221.

Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant, *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998), but instead may be based on either a defendant's general or specific contacts with the forum. *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir.2001).

*See also Brown & Brown, Inc. v. Cola,* 745 F.Supp.2d at 604.

As previously stated by this court, 2013 WL 3973975, *6, in its July 31, 2013 decision:

Furthermore, a cause of action alleged in the complaint must "arise out of or relate to" the defendant's contacts with the forum. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). If these requirements have been met, jurisdiction is "presumptively constitutional, and that the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Rantnetwork, Inc. v. Underwood, 11–CV–1283, 2012 WL 1021326, *9 (M.D.Pa.2012). For instance, "a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009); Mellon Bank (East) PSFS, Nt. Ass'n v.

Farino, 960 F.2d 1217 (3d Cir. 1992)(explaining that "fair play and substantial justice" inquiry is not mandatory).

Plaintiff asserts specific jurisdiction over Maritim and there is no allegation the court has general jurisdiction with respect to this case. The central question is whether Maritim purposefully availed itself "of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Maritim is correct in that "plaintiff does not argue or attempt to offer any evidence that Maritim took any action that would support a finding of jurisdiction, but rather relies on the actions of defendant [Zimmer]." (Doc. 60, at 11). The parties dispute whether there are sufficient facts in the record to show that an actual or apparent agency relationship existed between Zimmer and Maritim, and whether plaintiff can establish jurisdiction over Maritim through the actions of Zimmer.

Thus, prior to addressing the question of personal jurisdiction over Maritim, the court must determine whether Zimmer was acting as Maritim's agent during the relevant times of this case based on the evidence of record. It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH, 2013 WL 3973975, *6 (citation omitted).

As this court, 2013 WL 3973975, *6, previously stated in this case:

25

Pennsylvania recognizes four kinds of agency, but all "have three basic features in common: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." Rantnetwork, Inc. v. Underwood, 11–CV–1283, 2012 WL 1021326, *5 (M.D.Pa.2012). While express authority "is directly granted by the principal to the agent ... apparent authority arises from representations that the principal makes to those third parties with whom the agent acts on the principal's behalf." Id. However, "[w]hether the alleged authority is actual, apparent or otherwise, the element of control is the touchstone of a principle-agent relationship." Rantnetwork, Inc. v. Underwood, 11–CV–1283, 2012 WL 1021326, *5 (M.D.Pa.2012). In the context of a motion to dismiss, "[d]irect proof is unnecessary when the proffered evidence allows an inference of at least an implied intention to create the relationship of principal and agent." Id. Nevertheless, "the mere showing that one person does an act for another does not give rise to an inference that an agency relationship existed." Id.

Under the federal rules, a plaintiff must plead "enough facts from which a plausible claim of an agency relationship can be inferred ... not simply assert in conclusory terms that a party is another party's agent for purposes of vicarious liability." Johnson v. Dunkin' Donuts Franchising L.L.C., 2012 WL 1828028,11–CV–1117(W.D.Pa.2012)(interpreting Fed.R.Civ.P. 8 ). When the agency question is raised in the context of a Rule 12(b)(2) motion, however, the plaintiff's burden is the same as the burden of establishing jurisdiction. Rantnetwork, 2012 WL 1021326, at *5. Therefore, a plaintiff may rely on pleadings alone so long as the defendant has not disputed agency with competent evidence.FN1 Id.

> FN1. The court explained:
> The existence of an agency relationships is a question of fact. The party claiming that an agency relationship exists has the burden of so showing.

26

> This burden ultimately requires the party asserting agency to prove it by a fair preponderance of the evidence, but given that, in this case, the issue of agency before the court is cast as part of the jurisdictional question, Rantnetwork is held to the same burden of production here as in the context of jurisdiction itself: to the extent that the Underwoods contest agency in Mr. Underwood's affidavit, Rantnetwork must make a prima facie showing of an agency relationship between the Underwoods through the introduction of its own affidavits or other competent evidence. Rantnetwork, Inc. v. Underwood, 11–CV 1283, 2012 WL 1021326, *5 (M.D.Pa.2012).

At this stage of the case, since Maritim has provided evidence as to the agency issue and has disputed agency between itself and Zimmer with competent evidence, plaintiff may not rely solely on factual allegations in its amended complaint as it previously did when confronted with defendants' motions to dismiss its pleading. Indeed, plaintiff now offers the affidavit of Scott detailed above. As in the *Rantnetwork* case cited above, the issue of agency before the court is "cast as part of the jurisdictional question." As such, "[plaintiff] is held to the same burden of production here as in the context of jurisdiction itself." Maritim disputes agency existed between it and Zimmer through its evidence. Thus, "plaintiff must make a prima facie showing of an agency relationship between [Zimmer and Maritim] through the introduction of

27

its own affidavits or other competent evidence. Rantnetwork, Inc. v. Underwood, 2012 WL 1021326, *5.

Since the court specified at length above the averments in Scott's affidavit (Doc. 57) to show that there was a principal-agent relationship between defendants Zimmer and Maritim, it does not repeat them. The court, in its July 31, 2013 decision, 2013 WL 3973975, *7, also stated the facts alleged by plaintiff in its amended complaint to show this relationship. Plaintiff has now properly supported its alleged facts with Scott's sworn averments in her affidavit which creates a disputed fact as to whether Zimmer was acting as Maritim's agent when she ordered beauty products from plaintiff for Maritim's hotels. The court finds that through the lengthy course of dealings between plaintiff and Zimmer and the undisputed fact that plaintiff shipped products to Zimmer at one of Maritim's hotels, there is sufficient evidence to show that plaintiff could have reasonably believed that Zimmer had authority to order the products from plaintiff on Maritim's behalf and that Zimmer was authorized to bind Maritim. The evidence also shows that plaintiff directly sought payment for the balance due on its products from Maritim when Zimmer advised plaintiff that her accounts were frozen since plaintiff reasonably believed that Maritim was responsible. Further, in May of 2009, Koenig, a representative of Maritim,

submitted a final order request to plaintiff in Pennsylvania via e-mail. As stated above, Scott's affidavit shows that on May 14, 2009, Brigitta Koenig, on Maritim e-mail letterhead, e-mailed plaintiff in Pennsylvania to ask for updated pricing and minimum order requirements for another order to be shipped to Maritim's Timmendorfer Hotel.

In short, the court finds that plaintiff has met its burden of production based on Scott's affidavit and that plaintiff has presented enough evidence of apparent agency. Maritim has produced evidence that Zimmer was not an employee or agent of Maritim and did not have authority to act on Maritim's behalf. (Docs. 54-1 & 54-2). Thus, the court agrees with plaintiff that there is a genuine issue of material fact in dispute as to whether there was a agency relationship between defendants Zimmer and Maritim.

Since plaintiff has met its burden of proof and the issue as to agency has been found to constitute a disputed question of fact, the court must now decide whether it can exercise personal jurisdiction over Maritim.

"It is well established, ... , that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident." Sunbelt v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993)(citing

Burger King Corp. V. Rudzewicz, 471 U.S. 462, 478 (1985)). When deciding jurisdiction over a contractual dispute, the "court must consider the totality of the circumstances." Telcordia Tech., Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir.2006). Although "specific jurisdiction frequently depends on physical contacts with the forum," the defendant's actual presence is not necessary and has become increasingly "less determinative" with the advent of "communication by electronic facilities." Gen. Elec. Co. v. Deutz Ag, 270 F.3d 144, 150–51 (3d Cir.2001). The Third Circuit has enumerated several factors that courts should consider in determining whether the course of dealing between two parties to a contract satisfies the strictures of the minimum contacts test. ADM Milling Co. v. Gold Crust Baking Co., Inc., 09–CV–544, 2009 WL 1885880, at *2 (M.D.Pa.2009). These include: 1) the location of the contract negotiations; 2) whether the nonresident solicited business from the forum state; 3) whether the non-resident invoked and received benefits under the laws of the forum state; 4) the contemplated future consequences of the contract; 5) the terms and provisions of the contract; 6) the parties' course of dealing; and 7) the type of goods sold. Id.; see also Mellon Bank, 960 F.2d at 1223.

Issues of personal jurisdiction are to be decided on a case-by-case basis

and based on the unique facts of each case. Mellon Bank, 960 F.2d at 1224. In the present case, the evidence of record show that Zimmer solicited business from plaintiff, a Pennsylvania corporation, that Zimmer was aware plaintiff was a Pennsylvania corporation since she repeatedly e-mailed and called plaintiff in Pennsylvania, and that Zimmer and plaintiff (through Scott) continued to have a business relationship from March of 2007 through June of 2009. The products Zimmer ordered from plaintiff for Maritim were shipped from Pennsylvania and the invoices were sent from Pennsylvania. Partial payments for the products were received by plaintiff in Pennsylvania. Moreover, plaintiff and Zimmer engaged in extensive post-sale contacts in Pennsylvania as specified above. (See Doc. 57). Scott avers that she sent Zimmer plaintiff's "Conditions of Sale" document which clearly indicated that the parties were subject to the "exclusive jurisdiction and venue of the of the United States District Court for Luzerne County." (Doc. 21-1). While many of the communications between plaintiff and Zimmer and representatives of Maritim were via e-mails from plaintiff in Pennsylvania as opposed to personal meetings, as this court previously stated "[i]n a digital age, geographic location 'becomes less determinative' as communication by electronic facilities, rather than physical presence, is the rule.'" 2013 WL 3973975, *11(citation omitted).

Thus, the court finds that Maritim, through Zimmer, purposefully availed itself of the privilege of doing business in Pennsylvania. Even though Maritim correctly states that the Condition of Sale was unsigned, undated, and did not mention plaintiff, Zimmer or Maritim, (Doc. 60, p. 12), the court bases its finding that it can exercise personal jurisdiction over Maritim on Pennsylvania's long-arm statute and not on this document.

### B.   Venue

Next, the court must decide whether venue in this district is proper. Maritim argues that venue is improper in the Middle District of Pennsylvania, and that there are no facts of record to support venue in this district under 28 U.S.C. §1391(b)(1), (b)(2), and (b)(3). Maritim states that neither defendant resides within the Middle District of Pennsylvania and that there are no facts to show that a "substantial part of the events or omissions giving rise to the claim occurred" within the Middle District of Pennsylvania. Further, Maritim states that is it not subject to personal jurisdiction of this court. (Doc. 52, at 16-17). As the Court stated in *Lamanno v. Black*, 285 F.Supp.2d 637, 642 (E.D. Pa. 2003):

> Venue in diversity cases is governed by 28 U.S.C. §1391(a) which allows for venue to be proper in: (1) a judicial district where any defendant resides, if all defendants reside in the

32

same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. §1391(a).

*See* 28 U.S.C. 1391(b)(1)-(3).

As discussed above, the court finds that plaintiff has presented facts to show that a "substantial part of the events or omissions giving rise to the claim occurred" within the Middle District of Pennsylvania, and that Maritim is subject to personal jurisdiction in the Middle District of Pennsylvania. Thus, venue is proper in the Middle District of Pennsylvania under 28 U.S.C. §1391(b)(2) and (b)(3).

### C.    *Breach of Contract Claim Against Maritim*

The court now considers whether there are facts in the record to support plaintiff's breach of contract claim against Maritim. This court previously found that the United Nations Convention on Contracts for the International Sale of Goods ("CISG") applies to the contract alleged in this case as opposed to Pennsylvania law. 2013 WL 3973975, *17. This court then stated:

To plead a contract under the CISG, a party must allege an offer and an acceptance of the essential terms of a sale, including the goods, quantity, and price. 15 U.S.C.App. Art.

14(1). An offer must be "sufficiently definite and indicate[ ] the intention of the offeror to be bound in case of acceptance." Id. Acceptance can be made by any statement or conduct "indicating assent to an offer." 15 U.S.C.App. Art. 18(1). The CISG provides:

However, if, by virtue of the offer or as a result of practices which the parties have established between themselves or of usage, the offeree may indicate assent by performing an act, such as one relating to the dispatch of the goods or payment of the price, without notice to the offeror, the acceptance is effective at the moment the act is performed, provided that the act is performed within the period of time laid down in the preceding paragraph. 15 U.S.C.App. Art. 18(3).

As such, while silence or inactivity cannot constitute an acceptance under Article 18, an affirmative action that "indicat[es] assent to an offer" will suffice. 15 U.S.C.App. Art. 18. Finally, the CISG contains no statute of frauds requirement, so "a contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form." 15 U.S.C.App. Art. 11.

Id.

The plaintiff's evidence shows that Zimmer made an order for beauty products for Maritim's hotels and plaintiff shipped 441 cartons of beauty products on eight skids. Specifically, Scott avers that on March 3, 2008, plaintiff shipped from Pennsylvania 441 cartons of beauty products on eight skids directly to Maritim Hotel Dusseldorf, one of defendant's hotels located in Dusseldorf, Germany. (Doc. 57, at 6-7). This shipment consisted of the original

34

order for Maritim's 38 hotels and the subsequent order for the Timmendorfer. (Id.). Plaintiff then sent from Pennsylvania to Zimmer an e-mail with invoices for its products sent directly to Maritim in the amount of $181,547.80. (Doc. 57, at 7). On March 14, 2008, Maritim received and accepted the shipment from plaintiff at its Dusseldorf location. (Doc. 57, at 7). In April of 2008, plaintiff sent an e-mail from Pennsylvania and requested payment for the products, and sent Zimmer bank wire details and instructions about how to transmit payment for the March 3 shipment. (Doc. 57, at 7).

The court finds that these facts as averred in Scott's affidavit are sufficient to show that a contract existed for 441 cartons of beauty products at the price of $181,547.80. Plaintiff evidence shows that to date, plaintiff has not been fully paid for its products despite repeated demands made to both Zimmer and to representatives of Maritim.

Plaintiff contends that the contract resulted from the actions of Zimmer, and states that, based on its theory of agency, that Maritim is liable for the alleged breach. As discussed above, the court finds facts in dispute as to whether an apparent agency relationship existed between Maritim and Zimmer. There is no dispute that Maritim contracted with BRG to purchase beauty products for its hotels, and that BRG's CEO, Zimmer, purchased the products

from plaintiff to provide to Maritim's hotels. However, there are disputed facts as to whether Zimmer acted as an agent for Maritim with apparent authority in buying the products from plaintiff. Thus, the court finds that Maritim is not entitled to summary judgment with respect to plaintiff's breach of contract claim against it.

### D.    Unjust Enrichment Claim Against Maritim

Finally, Maritim argues that it is entitled to summary judgment with respect to plaintiff's claim for unjust enrichment. As this court stated in its July 31, 2013 decision, "to establish a claim for unjust enrichment under Pennsylvania law, a party must show 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" 2013 WL 3973975,*20 (citing Stoeckinger v. Presidential Financial Corp. of Delaware Valley, 948 A.2d 828, 833 (Pa.Super.Ct. 2008)); see also Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000). "To prevail, 'a claimant must show that the party against whom recovery is sought has received a benefit that would be unconscionable for her to retain.'" Mass. Mut. Life Ins. Co. v. Curley, 459 Fed.Appx. 101, 108 (3d Cir. 2012)((citations omitted).

Maritim correctly states the law is well-settled that "there is no claim for unjust enrichment when the party receiving services or goods has already paid for the value of same, even if that payment was to a party other than the one suing for unjust enrichment." (Doc. 60, at 24, citing, in part, EBC, Inc. v. Clark Bldg. Sys., 618 F.3d 253, 273 (3d Cir. 2010)). *See also* Meyers Plumbing & Heating Supply Co. v. West End Federal Savings & Loan Ass'n, 345 Pa.Super. 559, 498 A.2d 966 (1985). The court agrees with Maritim. Maritim has shown through its undisputed evidence that it paid Zimmer and her company, BRG, for the products Zimmer ordered from plaintiff for its hotels. As Maritims states, "plaintiff offers no fact of record to refute the affidavit of Mr. Prochaska that Maritim paid Ms. Zimmer's company [BRG] for all products at issue, or any fact of record to refute the documents evidencing wire transfers from Maritim to [BRG], evidencing such payment." (Doc. 60, at 25. Doc. 54-1. Doc. 54-6). As such, the court finds that Maritim's enrichment from the plaintiff's beauty products cannot be found to be unjust.

## V.     Conclusion

Accordingly, Maritim's motion for summary judgment, Doc. 51, shall be

**GRANTED IN PART,** and **DENIED IN PART**. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: January 27, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-2379-02.wpd