# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**IT'S INTOXICATING, INC.,**                  :

                                              :    **CIVIL ACTION NO. 3:11-2379**

         **Plaintiff**                        :              **(JUDGE MANNION)**

               **v.**                         :

**MARITIM HOTELGESELLSCHFT**                  :
**mbH and DANIELA ZIMMER,**

                                              :

         **Defendants**                       :

## <u>MEMORANDUM</u>

Presently before the court is the motion for partial reconsideration of defendant Maritim Hotelgesellschft mbh ("Maritim") pursuant to <u>Fed. R. Civ. Pro. 59(e)</u>. Maritim argues that the court erred in finding issues of material facts exist as to whether defendant Daniela Zimmer acted with apparent agency authority on behalf of Maritim when she purchased beauty products from plaintiff It's Intoxicating, Inc., for Maritim's hotels. The motion also asserts that the court lacks personal jurisdiction over defendant Maritim based on Pennsylvania's long-arm statute since defendant Zimmer did not act as an agent of Maritim. Because the court does not agree with Maritim's contentions, Maritim's motion, (Doc. <u>68</u>), will be **DENIED**.

## I.    Procedural Background

Since the court stated the procedural background of this case in its January 27, 2015 Memorandum, it will not fully repeat it herein. (Doc. 65). *See* It's Intoxicating, Inc. v. Maritim Hotelgesellschft mbH, 2015 WL 365681 (M.D.Pa. January 27, 2015). Suffice to say that in its recent memorandum, the court granted, in part, and denied, in part, Maritim's motion for summary judgment The court found that Maritim was not entitled to summary judgment with respect to plaintiff's breach of contract claim based on lack of jurisdiction, and that Maritim was entitled to summary judgment with respect to plaintiff's claim for unjust enrichment. The court issued an order with its findings. (Doc. 66). On February 10, 2015, Maritim filed a motion for partial reconsideration of the court's memorandum and order regarding the denial of its summary judgment motion on plaintiff's breach of contract claim based on lack of jurisdiction. (Doc. 68). Maritim's motion has been briefed. (Doc. 69, Doc. 70, Doc. 71).

## II.    Factual Background

The court will not state the entire facts of this case as they are contained

2

in its Doc. 65 memorandum.[1] Plaintiff is a Pennsylvania corporation, that distributes cosmetic products to various retailers. Defendant Maritim is a German company which owns and operates 38 hotels throughout Germany. Defendant Zimmer lives in Germany and was the director of Beauty Retail GmbH, a German company. Maritim had a contract for Zimmer's company to provide it with beauty products for its hotels. Zimmer contracted with plaintiff to fill an order for Maritim. Plaintiff alleged that Zimmer was an employee of Maritim who was delegated the authority to purchase beauty products on behalf of Maritim. Plaintiff shipped the products. Maritim paid Zimmer's company in full for all of the beauty products it received. Zimmer made some payments to plaintiff, but plaintiff was not fully paid for all of its products. The remaining facts relevant to Maritim's motion for reconsideration will be discussed below.

Moreover, the facts the court stated in its Doc. 65 memorandum were largely set forth in Cheryl Scott's July 2014 affidavit. (Doc. 57). Scott is plaintiff's Chief Operating Officer ("CEO"). Maritim now notes, without further elaboration, that "this affidavit was produced outside of the scope of discovery and clearly drafted solely to combat summary judgment and create issues of

---

[1]The court notes that the facts of this case as alleged in the amended complaint were also detailed in its July 31, 2013 Memorandum. 2013 WL 3973975, *1-*4. (Doc. 40).

fact where none exist." (Doc. 69, at 3 n. 4).

In *Summy-Long v. Penn. State University*, 2009 WL 811616, *2 (M.D. Pa. 3-26-09), the Court stated:

> Although affidavits are not required to sustain or overrule a motion for summary judgment, Rule 56(e) of the Federal Rules of Civil Procedure sets forth three requirements that a submitted affidavit must meet. It requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). The Third Circuit has emphasized that "the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) (internal citations omitted). In other words, an affidavit, or portions of an affidavit, are only admissible for purposes of summary judgment to the extent they are at least potentially admissible at trial. *See Hurd v. Williams*, 755 F.2d 306, 308 (3d Cir. 1985) (refusing to consider "facts" set forth in an affidavit opposing summary judgment because the facts were actually opinions inadmissible under Rule 701 of the Federal Rules of Evidence).

The Third Circuit has further ruled on so called "sham affidavits," clearly

establishing the law for this district. The Third Circuit in *Jiminez v. All-American Rathskeller, Inc.,* described  the "sham affidavit doctrine" and stated:

> "A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment. A sham affidavit cannot raise a genuine issue of fact because it is

merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant. *See Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986)*. *Liberty Lobby* specifically recognizes the trial judge's power to grant summary judgment on disputed records. (Id. at 251). Therefore, if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate."

In the present case, the lengthy facts of this case as alleged in the amended complaint were detailed in the court's July 31, 2013 Memorandum. 2013 WL 3973975, *1-*4. The almost identical facts, with some revisions and amendments, were set forth in Scott's July 2014 affidavit. Thus, Scott's affidavit was not a contradictory affidavit offered only for the purpose of defeating Maritim's summary judgment motion. Also, Scott's affidavit was clearly based on personal knowledge in dealing with Zimmer and Maritim and, on her position as CEO with plaintiff. It set forth facts that would be admissible in evidence, and showed that she was competent to testify to the matters averred therein. As such, Scott's affidavit was not a sham affidavit and defendant will have the opportunity to challenge Scott's credibility and rendition of facts at trial.


## III.   Discussion

A motion for reconsideration is a device of limited utility. It may be used

only to seek remediation for manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986); Massachusetts Mutual Life Insurance Co. v. Maitland, Civil No. 87-0827 (M.D. Pa. March 1, 1989) (Rambo, J.). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quineros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "...misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." See Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996), quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983). It may

not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus. Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

"A motion for reconsideration is not a proper vehicle to attempt to convince the court to rethink a decision it has already made" and "[s]uch motions also may not be used to give a dissatisfied party a chance to '[change] theories and try again,' obtaining a 'second bite at the apple.'" Kropa v. Cabot Oil & Gas Corp., 716 F.Supp.2d 375, 378 (M.D.Pa. 2010) (citations omitted).

Maritim contends that its motion was filed to correct clear errors of law and fact in the court's January 2015 Memorandum since "there are no facts of record of any actions taken by Maritim that Plaintiff could have reasonably believed demonstrated that Maritim represented to Plaintiff that Ms. Zimmer was empowered to bind Maritim to the purported contracts at issue or that Ms. Zimmer had apparent authority to act on behalf of Maritim." (Doc. 71, at 2) (emphasis original). Maritim contends that plaintiff failed to establish that it had

7

a reasonable belief that Zimmer had apparent authority to act on its behalf and, that the court erred by making such a finding relying on actions of Zimmer (the agent) and not Maritim (the principal) and, on the actions of Maritim that occurred after plaintiff shipped the goods to Zimmer. Thus, Maritim maintains that the court did not rely upon pre-performance contacts between Maritim and plaintiff that were sufficient to show plaintiff reasonably believed that Zimmer had apparent agency authority to act on Maritim's behalf and, that the pre-performance contacts upon which the court relied were actions of Zimmer and cannot be attributed to Maritim. Maritim also argues that the court erred by not considering the communications between Zimmer and Scott which demonstrated that Scott did not view Zimmer as having apparent agency, but rather believed Zimmer was acting on her own behalf to secure Maritim's sales, and not as Maritim's agent. (Id., at 3-5). Thus, Maritim states that plaintiff failed to show issues of material fact exist as to whether Zimmer had apparent agency authority to bind it to the contract between Beauty Retail GmbH and plaintiff.

The court found that plaintiff demonstrated issues of material fact that Zimmer had apparent agency authority to bind Maritim to the contract at issue. The court considered the following facts.

8

On October 5, 2007, Zimmer contacted plaintiff in Pennsylvania by e-mail, represented that she was acting on behalf of Maritim, and explained that Maritim was seeking beauty products to use in its hotels. (Doc. 57, at 1). On October 2, 2007, plaintiff responded by providing price lists as well as pictures of the products Zimmer requested. (Doc. 57, at 2). On October 11, 2007, Zimmer called plaintiff and asked how long it would take to manufacture and ship the specified products to Maritim's hotels. (Doc. 57, at 2). Plaintiff responded via e-mail the same day with information regarding manufacturing and shipping times for specific products. Plaintiff also asked Zimmer in an e-mail, three days later, if she needed assistance in forecasting product quantities for Maritim's 38 hotels. (Doc. 57, at 2).

Plaintiff and Zimmer continued their discussions about plaintiff's products until October 19, 2007, when Zimmer called plaintiff at Scott's Pennsylvania phone number and stated that Maritim wished to buy plaintiff's products for use in 38 of its hotels in Germany. (Doc. 57, at 2-3).

On October 22, 2007, Zimmer contacted plaintiff to request pricing and information for a distinct type of beauty products for Maritim's Timmendorfer Strand Hotel, and plaintiff sent an e-mail response with price lists and information. (Doc. 57, at 3-4). Also, on October 22, 2007, plaintiff provided

9

Zimmer price lists for its products, and Zimmer responded by asking plaintiff for "suggested retail prices Maritim should charge for specific products for the Maritim Timmendorfer Strand Hotel." (Doc. 57, at 4).

The court also relied upon the pre-performance conduct of Maritim whereby it executed an Exclusivity Agreement with Aromapothecary. Specifically, on October 22, 2007, Zimmer called Scott again and requested that specific products Maritim sought to buy from plaintiff be sold exclusively to Maritim. (Doc. 57, at 3). On the same day, plaintiff provided Zimmer a twelve month "Exclusivity Agreement," which the parties subsequently agreed to lengthen to eighteen months at the request of Maritim's CEO. (Doc. 57, at 3). Plaintiff also sent a document titled "Conditions of Sale," which later became part of the sales agreements. (Doc. 57, at 3).

On October 23, 2007, Plaintiff requested an estimate of Maritim's order for its 38 hotels, but Zimmer explained that Maritim's CEO was currently approving the company's product quantities. (Doc. 57, at 4). On October 29, 2007, plaintiff telephonically discussed with Zimmer the exact quantity of goods and deposit required by Maritim's hotels. (Doc. 57, at 4). Zimmer followed this call with an e-mail to plaintiff stating that she would send a purchase order and deposit soon. Zimmer requested bank details from plaintiff. (Doc. 57, at 4-5).

In November of 2007, Zimmer and plaintiff discussed Maritim's confidential sales numbers, payment details, delivery estimates, purchase orders, and further amendments to the Exclusivity Agreement. (Doc. 21, at 5. Doc. 57, at 5). On November 24, after revising the Exclusivity Agreement for the second time, plaintiff requested guidance from Maritim as to whether an order of goods by another German company conflicted with the party's Exclusivity Agreement. (Doc. 57, at 5). Zimmer looked into the potential agreement, concluded that there was no conflict, and advised plaintiff that it could proceed with the sale. (Doc. 57, at 5).

On December 1, 2007, plaintiff received, via U.S. mail in Pennsylvania, the final Exclusivity Agreement, signed by the CEO of Maritim. "The mail item was contained in an official Maritim logo and letterhead envelope." (Doc. 57, at 6). The Exclusivity Agreement was between Aroma Works Software Inc./Aromapothecary Products and Maritim, and the "Aromapothecary Conditions of Sale" document which Scott provided to Zimmer, indicated that it was made for the seller "Aromapothecary Products/Aroma Works Software Inc." (Doc. 21–1). However, plaintiff had an agency relationship with Aroma Works Software Inc./Aromapothecary Products, and the agreement related to the sales contract at issue in this case.

11

On December 14, 2007, Zimmer called plaintiff to request the status of the production of the products for Maritim's hotels. Plaintiff responded that it had not yet received a purchase order from Zimmer but that materials had been ordered and production begun. (Doc. 57, at 6). On January 14, 2008, plaintiff received an e-mail from Zimmer with a spreadsheet detailing the quantities of product to be shipped to the 38 Maritim hotels. On January 15, 2008, Zimmer sent a request to plaintiff for leatherette trays for the 38 Maritim hotels, and plaintiff sent an e-mail to Zimmer referring Maritim to a tray manufacturer in China. Zimmer also sent plaintiff an e-mail indicating that Maritim would announce the sales of the products in its hotels at a trade show in March of 2008. (Doc. 57, at 6). Also, in January of 2008, plaintiff received an order from Zimmer for the purchase of spa products for Maritim's Timmendorfer Hotel. (Doc. 57, at 6).

On March 3, 2008, plaintiff shipped from Pennsylvania 441 cartons of beauty products on eight skids directly to Maritim Hotel Dusseldorf, one of defendant's hotels located in Dusseldorf, Germany. (Doc. 57, at 6-7). The products were shipped to "Daniela Zimmer/Beauty Retail" at the Maritim Hotel Dusseldorf location. (Doc. 53 at ¶'s 19-21; Doc. 54-1 at ¶ 6). This shipment consisted of the original order for Maritim's 38 hotels and the subsequent order

12

for the Timmendorfer. (Id.). Plaintiff then sent  Zimmer an e-mail with invoices for its products sent directly to Maritim's hotel in the amount of $181,547.80. (Doc. 57, at 7). Scott averred that the purchase price was specifically communicated to Maritim. On March 14, 2008, Maritim received and accepted the shipment from plaintiff at its Dusseldorf location. (Doc. 57, at 7). In April of 2008, plaintiff sent an e-mail and requested payment for the products, and sent Zimmer bank wire details and instructions about how to transmit payment for the March 3 shipment. (Doc. 57, at 7).

The court also considered the numerous averments which Scott made regarding facts that occurred during the negotiations and the performance of the contract to support the contention that Zimmer was, at all relevant times, acting as agent for Maritim "with actual and/or apparent authority." The court does not repeat these averments however, it points out Scott stated that Zimmer represented she received salary from Maritim, Scott observed Zimmer in meetings with Maritim directors, and Zimmer described confidential corporate initiatives of Maritim. (Doc. 57, at 13-14). *See* 2015 WL 365681, *6. Further, during the formation and performance of the contract, Scott personally traveled to Maritim's hotel, attended Maritim's events, and was present for Maritim's meetings. Id., at *7.

13

"Courts applying common-law agency principles have long recognized that '[i]f the principal holds out the agent to the world, as a general agent in the transaction of his business, any contract made by him, within the scope of that business, will bind the principal; ... .'" Myers v. Garfield & Johnson Enterprises, Inc., 679 F.Supp.2d 598, 613 (E.D.Pa. 2010). The "apparent agency will not exist when the plaintiff was aware that the agent was acting outside the limits of his authority." Id. at 614.

Based on the above facts, the court found that there were disputed material facts as to whether a principal-agent relationship existed between Zimmer and Maritim and, as to whether Maritim could be bound by Zimmer's agreement with plaintiff. The court relied upon all of the facts in the record and the significant history of the dealings between plaintiff and Zimmer, both during the negotiation of the contract and after the contract was entered. Thus, even though Zimmer and Beauty Retail GmbH were the "Bill To" party as indicated by the invoices (see  Doc. 53 at ¶'s 24, 25, 28; Doc. 54-5, 54-8), even though Zimmer received prior invoices and made prior payments to plaintiff and, even though plaintiff did not try to get paid from Maritim until Zimmer informed it that her accounts were frozen, these facts which Maritim highlights do not compel that Maritim's reconsideration motion must be granted. Rather, these facts go

14

to show that disputed material facts exist as to whether Zimmer was acting with apparent agency authority for Maritim.

Also, insofar as Zimmer admitted that she is not and never was an agent of Maritim, and that Maritim never authorized her to act on Maritim's behalf or to enter into any contractual relationship on Maritim's behalf, likewise these admissions create disputes of material fact as to the agency issue. (Doc. 54-1, ¶ 5). Further, Maritim's evidence showing communications between Scott and Zimmer indicating plaintiff

understood that Zimmer was acting for her own benefit in selling plaintiff's goods to Maritim, create disputed material facts as to whether plaintiff believed that Zimmer had apparent authority to act on Maritim's behalf. (See Doc. 54-7; Doc. 52 at pp. 8-9; Doc. 60 at p. 6-9). However, they do not demonstrate that Maritm was entitled to summary judgment on plaintiff's breach of contract claim and that a manifest injustice will occur if the court denies Maritim's motion for reconsideration.

Since the contacts plaintiff had with Zimmer and Maritim to collect payment after it delivered the products are not at issue in Maritim's instant motion, they will not be fully discussed. Suffice to say that on June 4, 2008, plaintiff received a call from Zimmer requesting credit for products that were

damaged during shipping from the Dusseldorf hotel to the other Maritim hotels. (Doc. 57, at 8-9). On June 5, 2008, plaintiff received, via wire transfer to its Pennsylvania bank, a payment of $25,724.85 for the March 3 shipment. (Doc. 21, at 9.) Plaintiff contacted Zimmer by telephone the same day to inquire why Maritim had not wired the entire outstanding amount. (Doc. 57, at 9). Subsequently, plaintiff received joint e-mails from Zimmer and her alleged mother, Brigitta Koenig, the UPS handler at Maritim hotels, about damages during shipping. (Doc. 57, at 9). On June 15, 2008, plaintiff sent an e-mail to Zimmer with a memo crediting Maritim's account in the amount of $5,823.60. (Id.).

Thus, there are disputed facts in the record as to whether an apparent agency relationship existed between Zimmer and Maritim, and whether plaintiff can establish jurisdiction over Maritim through the actions of Zimmer. The court did not simply rely on the facts regarding the actions taken by Zimmer, and not Maritim, and it did not only rely on facts that occurred after plaintiff shipped the goods. The court thoroughly discussed how plaintiff, via Scott, believed Zimmer had the power to bind Maritim based on the conduct and actions of Maritim and its officials. The court finds that a jury could find, based on Scott's affidavit, it was reasonable for Scott to believe that Zimmer had authority to act on

16

Maritim's behalf and was in fact acting in that capacity regarding the contract at issue. Since the court detailed Scott's averments regarding why she believed Zimmer had authority to act for Maritim during negotiation and performance of the contract in its January Memorandum, it will not repeat them. 2015 WL 365681, *6. (*See* Doc. 59, at 13-14).


## IV.   Conclusion

Accordingly, Maritim's motion for partial reconsideration, (Doc. 68), of the court's January 27, 2015 Memorandum and Order, (Doc. 65, Doc. 66), shall be **DENIED**. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 19, 2015**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-2379-03.wpd